**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARINA WOOD,<br><br>               Plaintiff,<br><br>v.<br><br>KAPLAN PROPERTIES, INC. and AMY<br>McMILLAN,<br><br>               Defendants. | Civil Action No.: 09-1941 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Presently before this Court is Defendants' motion to dismiss the Complaint, the gravamen of which alleges that the Plaintiff Marina Wood was discriminated against by her former employer, Kaplan Companies, Inc., and one of its managers, Amy McMillan, (collectively "Defendants"). Defendants' motion, filed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, attacks all four counts of the Complaint. The Complaint asserts the following causes of action: Count I alleges a violation the Age Discrimination in Employment Act ("ADEA"); Counts II and III allege violations of Title VII's provisions relating to prohibitions against both unequal pay and discrimination based upon age and gender; and Count IV alleges a willful violation of the Equal Pay Act ("EPA"). The Court has considered the parties' submissions and decides this matter without oral argument as provided by Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion to Dismiss is denied in part and granted in part.

## I.    BACKGROUND

The facts that are relevant for purposes of this motion are not in dispute.  The Plaintiff, Marina Wood, a sixty three (63) year old female, was employed in May 1999 as a Sales Associate by Defendant Kaplan Companies ("Kaplan"), a developer of residential homes in the State of New Jersey.  (Compl. ¶¶  4, 6.)   Plaintiff, a licensed real estate agent, was assigned to sell homes at Kaplan's "Woodfield at Mount Olive" development.  (Id. at ¶ 6.)  In August 1999, she was promoted to Sales Manager.  (Id.)  While employed at Kaplan's "Woodfield at Mount Olive" development, Plaintiff "closed more than $120 million dollars in sales, and was recognized by Kaplan for her outstanding performance every year she was working for the defendant;" in 2002 "she was nominated by Kaplan's sales and marketing team for the statewide 'salesperson of the year award.'" ( Id. at ¶  8.)

Beginning in May and June of 2006, "[t]he president of Kaplan's residential department was replaced by Jay Franklin, a former construction worker who had little or no experience in sales." (Id. at ¶ 10.)  In addition, Kaplan's sales manager, Bob Brunno, was terminated and replaced by Defendant Amy McMillan.  (Id.)  Ms. McMillan was hired to fill the role of "director of sales."  (Id.)  According to Plaintiff, she was told by Jason Kaplan, the company's President, "that she would be the one to sell 90 townhomes that had yet to be sold in the development."  (Id. at ¶ 11.)  However, "[w]hen defendant McMillan took over as sales director, . . . she decided that the remaining 90 townhomes would be sold [instead] by Peter Dykes, a young man who at that point had been with the Company less than two years."  (Id.)  Plaintiff indicated that she confronted Ms. McMillan about her decision and that Ms. McMillan "became evasive."  (Id.)  Other problems between Plaintiff and Ms. McMillan arose: Ms. McMillan "accused [Plaintiff] of

failing to properly maintain the model homes" and also allegedly "badgered [her] for the fact that the model homes were found locked on a Thursday afternoon." (Id. at ¶ 12.) Plaintiff claims that Ms. McMillan ignored her explanation that the model homes were locked because vandals had damaged them in the past, and that Ms. McMillan "continued [a] tirade" directed at her in the presence of coworkers. (Id.)

Thereafter, "on August 17, 2006, the [P]laintiff received a written warning for unsatisfactory performance, for reasons that [Plaintiff claims] were entirely fabricated." (Id. at ¶ 13.) In addition, Plaintiff states that she "began receiving mysterious phone calls in the early part of the day when she first arrived and late in the afternoon before she left for home." (Id.) On September 11, 2006, Plaintiff was terminated by Kaplan–she was sixty one (61) years old– for "poor sales" and was replaced by a twenty six (26) year old salesman. (Id. at ¶¶ 14, 21.) At the time of Plaintiff's termination in 2006, 315 of the 357 single family homes built in the residential community were sold. (Id. at ¶ 8.)

Subsequent to being terminated, Plaintiff alleges that she learned "the defendants had collectively taken a number of adverse actions against its older female employees" and "paid its sales team in a way that favored younger male employees." (Id. at ¶¶ 15, 17.) Examples of disparate treatment which Plaintiff points to include paying younger males higher base salaries and also higher commissions for every single family home that they sold. (Id. at ¶¶ 17-19.) Plaintiff explains that, in 2004, her commission per single family home sold was $1,200, whereas a newly hired young male, in 2005, received a $2,000 commission per single family home sold. (Id. at ¶ 18.)

On June 1, 2007, Plaintiff completed and filed an Intake Questionnaire with the Equal

Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her age and gender. (See Cert. of Justin A. Meyers, Esq. in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss the Compl. [hereinafter "Meyers Cert."], Ex. A.) On July 17, 2007, Plaintiff completed a formal "Charge of Discrimination," which was received by the EEOC on July 20, 2007. (Id. at Ex. B.) On or about December 4, 2008, Plaintiff received a "Dismissal and Notice of Rights" document issued by the EEOC. Thereafter, Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Middlesex County, on February 23, 2009. (Defs.' Not. of Removal, ¶¶ 1-2.) Defendants then removed the action to this Court. This Court has original federal question jurisdiction over Plaintiff's action under 28 U.S.C. § 1331.

## II.   LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted, alteration in original). In the present case, Plaintiff's

Complaint relies on and references various documents that Plaintiff filed with the EEOC; these documents are properly considered for purposes of this motion because they are integral to Plaintiff's discrimination claims.

## III.    DISCUSSION

Defendants' motion to dismiss presents a number of issues.  First, Defendants argue that Counts I, II, and III are barred due to the Plaintiff's failure to timely exhaust administrative remedies before filing this action.  As to Count IV, Defendants argue for dismissal of that count claiming that the alleged violation of the Equal Pay Act ("EPA") is barred by that statute's two-year statute of limitations.  Lastly, Defendants seek a dismissal of Plaintiff's claims against Ms. McMillan, as an individual Defendant, because they argue neither the ADEA, Title VII, nor EPA permit a claim against a supervisor under the factual circumstances of this case.

### A.  Plaintiff's ADEA and Title VII Claims

Defendants argue that Plaintiff's ADEA and Title VII claims, as stated in Counts I, II, and III of the Complaint, are barred because Plaintiff failed to timely exhaust her administrative remedies.  Before a plaintiff may bring an action under the ADEA or Title VII, a complainant must file a charge with the EEOC within 180 days of the alleged unlawful employment action. See 42 U.S.C. § 2000e-5 (Title VII); 29 U.S.C. § 626(d) (ADEA).  The 180 day deadline is extended to 300 days when the complainant lives in a "deferral state," such as New Jersey and Pennsylvania.  See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); Cardenas v. Massey, 269 F.3d 251, 255 n.2 (3d Cir. 2001).  Therefore, a plaintiff in New Jersey is barred from bringing an action under the ADEA or Title VII for failure to exhaust administrative remedies if they fail to file a charge with the EEOC within the 300-day time period.

In the instant action, it is undisputed that Plaintiff's 300-day period to file with the EEOC expired on July 8, 2007.  However, prior to that, on June 1, 2007, within the 300-day period, Plaintiff completed and filed with the EEOC an Intake Questionnaire.  Subsequent to filing the Intake Questionnaire, and after the 300-day period, Plaintiff completed and filed a formal Charge of Discrimination on July 17, 2007, nine (9) days outside the 300-day period.  Thus, the issue before this Court is whether the completion and filing of the Intake Questionnaire constitutes a filing of a charge with the EEOC within the 300-day period.

The Supreme Court in Federal Express Corporation v. Holowecki[1]  concluded that a complainant's filing, particularly an Intake Questionnaire, may constitute the filing of a "charge" if  the document satisfies a two-pronged analysis:  (1) the document contains the information required by the EEOC regulations; and (2) the filing can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  128 S. Ct. 1147, 1157-58 (2008); see also Holender v. Mut. Indus. N., Inc., 527 F.3d 352, 353 (3d Cir. 2008).

The EEOC regulations state that the following elements should be included for a filing to constitute a "charge" of discrimination:

> (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings.

---

[1] The Supreme Court in Holowecki was presented with an ADEA claim and was careful to "note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII."  128 S. Ct. at 1153.  This Court agrees with other district courts that have applied Holowecki to both ADEA and Title VII claims because both statutes have the same prerequisite of filing a charge of discrimination with the EEOC within 300 days of an alleged adverse employment action.  See, e.g., Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.C. Dist. Ct. 2008) (citing Grice v. Balt. County, No. 07-1701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5, 2008) and the cases cited in Grice).

Holowecki, 128 S. Ct. at 1154 (citing 29 C.F.R. § 1626.8(a)).  The Court in Holowecki continued its analysis of how the EEOC defines a "charge" and found that the next subsection provides that a document is sufficient to constitute a charge if it is "in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act[s]."  Id. (quoting 29 C.F.R. § 1626.8(b)) (alteration in original).

The second prong enunciated in Holowecki requires that "the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes."  Id. at 1158; see also Holender, 527 F.3d at 356 (noting that the Supreme Court in Holowecki rejected the Third Circuit's "manifest intent" standard to the extent that it had "suggested that the filer's [subjective] state of mind is somehow determinative").  The Court in Holowecki further stated that "[w]ere the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action;" however, the Court found that the plaintiff's six page affidavit attached to the Intake Questionnaire was "properly construed as a request for the agency to act."  128 S. Ct. at 1159-60.  The affidavit stated: "[p]lease force [the alleged wrongdoer] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ."  Id. (alteration in original).

Applying the Holowecki holding to the facts of this case leads this Court to conclude that the Plaintiff timely filed a "charge" with the EEOC upon her completion and filing of her Intake Questionnaire on June 1, 2007.  The Intake Questionnaire at issue includes: the names, addresses and telephone numbers of both the person making the charge and the charged entity; a statement of facts describing the alleged discriminatory acts; and an adequate calculation of the number of

employees working for the charged employer.  Although the Intake Questionnaire does not contain a statement indicating whether Plaintiff has initiated any state proceeding in the matter at hand, this fact is immaterial.  Plaintiff's Intake Questionnaire clearly identifies the prospective employer and their alleged discriminatory acts.  Further, this Court finds that the Intake Questionnaire satisfies the second prong of Holowecki since it can be reasonably and objectively construed as a request for the EEOC to begin its remedial process.  Plaintiff's detailed, three-plus page description of the alleged discriminatory acts is similar to the six page affidavit that the Holowecki court relied upon.  Although Plaintiff's written statement does not contain an affirmative statement expressly requesting that the EEOC take action, this Court finds that her detailed account of her former employer's alleged discriminatory acts would lead a reasonable mind to interpret such statements as a plea for the EEOC to investigate and begin its remedial process by taking agency action.  This finding is "consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft."  Id. at 1158.

Defendants also take the position that Plaintiff's Title VII claims should be dismissed as they are not "verified," as required by 42 U.S.C. § 2000e-5(b).  However, an applicable EEOC regulation provides in pertinent part that:

> A charge may be amended to cure technical defects or omissions, including the failure to verify the charge, or to clarify or amplify the allegations made therein.  Such amendments...will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b); see also Edelman v. Lynchburg College, 535 U.S. 106, 113, 115 (2002); Cunningham v. Freedom Ford Sales, Inc., No. 03:2006-205, 2007 U.S. Dist. LEXIS 60613, at *6-7 (W.D. Pa. Aug. 17, 2007).  Thus, the Court deems Plaintiff's Intake Questionnaire and

accompanying written statement filed on June 1, 2007 as timely verified.  Plaintiff's subsequent

Formal Charging document, which was signed under oath, relates back to her Intake

Questionnaire.[2]  Therefore, Defendants' motion to dismiss Plaintiff's ADEA and Title VII

claims, as stated in Counts I, II, and III of the Complaint, is denied.

### B.  Plaintiff's Equal Pay Act Claim

Defendants argue that Plaintiff's EPA claim should be dismissed because it is time

barred.  Plaintiff was terminated on September 11, 2006; the present action was filed in state

court on February 23, 2009, over two years later.  The EPA requires that actions be commenced

within two years, "except that a cause of action arising out of a willful violation may be

commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "[A]n

employer 'willfully' violate[s] the Act when it 'knew or showed reckless disregard for the matter

of whether its conduct was prohibited' by [a provision of] the Fair Labor Standards Act

[("FLSA")]."  Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296 (3d Cir. 1991) (quoting

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  In setting forth the above

standard for willfulness under § 255(a), the Supreme Court in McLaughlin held that "[t]he fact

that Congress did not simply extend the limitations period to three years, but instead adopted a

two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant

distinction between ordinary violations and willful violations."  486 U.S. at 132.  In rejecting a

---

[2] Plaintiff's Intake Questionnaire contained the following provision, in small print, at the bottom of the form: "When this form constitutes the only time written statement of allegations of employment discrimination, the Commission will, consistent with 29 C.F.R. 1601.12(b) and 29 C.F.R. 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)."  This statement is consistent with Plaintiff's Dismissal and Notice of Rights document issued by the EEOC.  In this document, the EEOC had the option to, but did not, mark a box that reads: "Your charge was not timely filed with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge."  These facts exemplify EEOC protocol and policy as to how they will treat the documents a complainant files with them.

standard proposed by the Secretary of Labor, the Court further stated that the Secretary's standard would "permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." Id. at 135.  The Court clarified that "[i]f an employer acts unreasonably, but not recklessly, *in determining its legal obligation*, then, although its action would be considered willful under petitioner's test, it should not be so considered under . . . the . . . standard we approve today."  Id. at 135 n.13 (emphasis added).  Additionally, in Martin, the Third Circuit stated that "whether [a defendant's] knowledge or intent amount[] to willfulness under the statute is a question of law."  949 F.2d at 1292.  Thus, for purposes of a motion to dismiss, the question is whether Plaintiff has made sufficient allegations, which accepted as true, could demonstrate that Defendants knew or recklessly disregarded their legal obligation to comply with the EPA.

An ordinary violation of the EPA is established by a plaintiff first "demonstrating that employees of the opposite sex were paid differently for performing 'equal work'–work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  If the plaintiff sets forth a prima facie case, "[t]he burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act," that the disparity in pay was a result of "i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex." Id. at 107 & n.6.   Here, there is no doubt that Plaintiff has alleged at least an ordinary violation of the EPA. She has alleged that she was paid $1,200 commissions per single family home versus the $2,000 commissions paid to her male co-workers who were performing substantially the same work

under similar working conditions.  She also alleges that the company increased the base salaries of its male employees faster than that of female employees.

But, to state a claim for a willful EPA violation, more than an ordinary violation must be alleged.  In Frasier v. General Electric Co., the Second Circuit reversed and remanded a district court's dismissal of a complaint with prejudice, requiring the district court to dismiss the claim without prejudice to the plaintiff to amend the complaint.  930 F.2d 1004, 1009 (2d Cir. 1991). The court stated that in amending the complaint, the plaintiff, even if able to state a claim for an ordinary EPA violation, will state a claim for a willful violation of the EPA only if she can "in good faith allege that [the employer's] conduct was willful."  Id.  Thus, something more than a base ordinary violation must be plead to state a claim for a willful violation of the EPA. Additionally, in accordance with Iqbal, it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support such a conclusion.  To this end, cases which elaborate on the types of facts which have been held sufficient to support a finding of willfulness under § 255(a), regardless of the procedural posture of the case, are useful for determining what minimally must be plead to state a claim for a willful violation of the EPA.

In Martin, the Third Circuit found a district court's finding of a willful FLSA violation sufficiently supported where the employer had expressed concern about the legality of the pay structure in question and "continued using [the pay structure] despite concerns and doubts as to its legality."  949 F.2d at 1296.  The Court held that the employers' "evident indifference toward the requirements imposed by the FLSA is fully consistent" with a willful violation of the Act.  Id. The Second Circuit found facts sufficient to support a jury's finding of a willful EPA violation

where a plaintiff complained to her employer about a discrepancy in pay between female and male employees but the employer did nothing even after being put on notice.  <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 119-20 (2d Cir. 1997).  On the other hand, the Fifth Circuit, in granting summary judgment for a defendant, recently held that "the facts that [the plaintiff] was paid less than many of her male colleagues and that [her employer] knew she was dissatisfied with this difference [was] not enough to raise a fact question as to whether [the employer] knew or recklessly disregarded that its pay scale was prohibited by the FLSA."  <u>Kiki Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.</u>, No. 06-031111, 2009 U.S. App. LEXIS 18552, at *16 (5th Cir. Aug. 18, 2009).  The Fifth Circuit further stated that the plaintiff "ha[d] not provided evidence that [the employer] actually knew that the pay structure violated the FLSA, or that [it] ignored or failed to investigate [her] complaints."  <u>Id.</u>  The Court held that without more, the violation was an ordinary EPA violation subject to the two year limitations period.  <u>Id.</u>

Here, Plaintiff has not alleged that she complained to Defendants that she was being paid less than her male co-workers and that they disregarded her complaints.  She has not alleged that Defendants ever expressed concern that the pay differentials may not be legal.  She has simply alleged that she was paid less than male co-workers for the same work, that work was redistributed from her to these male co-workers, and that Ms. McMillan was generally hostile towards her.  While clearly stating a claim for an ordinary violation of the EPA, these allegations say nothing about Defendants' knowledge or disregard for their legal obligation under the EPA, the focus of the distinction between the two and three year limitations period, as made clear by the Supreme Court in <u>McLaughlin</u>.  Therefore, the Court finds that Plaintiff has failed to adequately plead facts to support a willful violation of the EPA.  Defendants' motion is granted

for this claim; it is dismissed without prejudice.

**C.  Plaintiff's Claims against Amy McMillan**

As to Defendant Amy McMillan, "Plaintiff agrees that defendant Amy McMillan cannot

be held individually liable under Title VII or the ADEA."  (Br. of Pl. Marina Wood in Opp'n to

Defs.' Mot. to Dismiss the Compl. Under Fed. R. Civ. P. 12 (b)(6), at 15.)  Therefore, this Court

grants the Defendants' Motion to Dismiss the Plaintiff's Title VII and ADEA claims against the

Ms. McMillan. Additionally, because this Court has already dismissed Plaintiff's EPA claim for

insufficient pleading, it need not reach the issue of whether Ms. McMillan can be individually

liable for this claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in

part.  Defendants' motion is denied with respect to Counts I, II, and III against Kaplan Properties,

Inc.  The motion is granted with respect to Counts I, II, and III against Ms. McMillan.  It is also

granted with respect to Count IV, Plaintiff's EPA claim.  An appropriate Order accompanies this

Opinion.

DATED: September 29, 2009            /s/ Jose L. Linares
                                     JOSE L. LINARES
                                     UNITED STATES DISTRICT JUDGE